```
              UNITED STATES DISTRICT COURT
                         FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA


WAYNE KELLER,                      :
        Plaintiff                  :
                                   :
    v.                             :    CIVIL NO.3:CV-02-1925
                                   :
                                   :    (Judge Conaboy)
PENNSYLVANIA BOARD OF PROBATION    :
AND PAROLE, ET AL.,                :
        Defendants                 :
```
_____

## **MEMORANDUM**
### **Background**

    Wayne Keller, an inmate presently confined at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas), filed this pro se civil rights action.  By Memorandum and Order dated September 8, 2004, this Court partially granted the Defendants' motion for summary judgment.

    Specifically, the Pennsylvania Board of Probation and Parole (Parole Board) was granted summary judgment on the basis that is was not a properly named Defendant, Plaintiff's pre-October 22, 2000 claims were dismissed as being time barred and his claims for monetary compensation against the Defendants in their official capacities were determined to be barred by the Eleventh Amendment.  Summary judgment was also granted in favor of Chief Hearing Examiner Robert Bitner, SCI-Dallas

Superintendent Thomas Lavan and Hearing Examiner Donald Jones.[1]

The Remaining Defendants are Secretary Kathleen Zwierzyna and Sean Ryan of the Parole Board and SCI-Dallas Correctional Officer William Higgins. Keller alleges that he was improperly denied release by the Parole Board in 1997, 2001, and 2002 in violation of his due process and equal protection rights. Specifically, Plaintiff asserts that he has been subjected to a retaliatory denial of parole since 1997 due to his refusal to pay a thirty dollar ($30.00) offender's fee and because of his threats to initiate litigation against the Parole Board. See Doc. 1, ¶¶ 10 & 18.

Keller's second claim argues he was subjected to additional retaliation when Correctional Officer Higgins issued him a falsified misconduct charge on September 6, 2001. The misconduct charged Plaintiff with threatening an employee or their family with bodily harm, using abusive language to an employee and failure to obey an order. Plaintiff indicates that the disciplinary charge was retaliatory in that its purpose was to support the ongoing denial of his parole. His complaint seeks nominal and punitive damages, as well as declaratory and injunctive relief.

By way of background, Keller was convicted of Third Degree Murder in the Philadelphia Court of Common Pleas. As a result,

---

[1] It is noted that the Defendants' requests for absolute and qualified immunity were denied.

2

he was sentenced to an eight (8) to twenty (20) year term of imprisonment.  Plaintiff was granted parole on April 20, 1991.  During February, 1992, he failed to report to his supervising parole officer.  The following month, Keller was arrested on charges of Robbery, Receiving Stolen Property, Theft, Simple Assault, and Recklessly Endangering Another Person by police in Philadelphia.  He was released after posting bail.  Following his release, Keller's whereabouts were unknown until April 24, 1992, when he was arrested in Allentown, Pennsylvania on charges of Attempted Homicide, Violation of the Uniform Firearms Act, Aggravated Assault, Theft by Receiving Stolen Property, Terroristic Threats, Recklessly Endangering Another Person, and Simple Assault.

Following an August 1992 revocation hearing, Plaintiff was determined to be a technical parole violator and ordered to serve nine (9) months back time.  In January, 1993, he was convicted of Robbery, Resisting Arrest and being a former convict in possession of a firearm.  On May 11, 1993, Keller had a second revocation hearing where he was recommitted as a convicted parole violator and ordered to serve thirty-six (36) months back time.

Plaintiff was denied reparole on January 23, 1996 for a variety of reasons, including his need for counseling and treatment; poor prison adjustment; unfavorable recommendation from the Pennsylvania Department of Corrections (DOC); and

factors associated with his new criminal conduct.  He was denied reparole for a second time on February 19, 1997 based on many of the same factors enumerated by the Parole Board following his 1996 parole proceedings.

On November 26, 1997, Plaintiff was granted reparole to his detainer sentence provided that he:  remain misconduct free; pay $30.00 of court costs in accordance with 71 P.S. § 180-7.17 (Act 27); complete required institutional programming; and submit a DNA sample.  Keller refused to pay the Act 27 fee based on his belief that its application in his case violated the Ex Post Facto Clause.  He also refused to sign an acknowledgment of the conditions for his reparole.  As a result, Plaintiff was not granted reparole.

Keller was again considered for reparole on August 21, 2001, at which time he requested that correctional officials provide him with proof of his obligation to pay the Act 27 fee. After confirmation of the Plaintiff's obligation to pay the Act 27 fee was given, Keller was scheduled to be reconsidered for reparole on September 27, 2001.  However, on that date Keller was in the prison's Restricted Housing Unit (RHU), having been found guilty of an institutional misconduct charge.[2]   His request for reparole was denied.

The Parole Board received a letter from Keller on October

---

[2] Plaintiff allegedly refused to attend his reparole interview.

17, 2001, wherein he threatened to file a lawsuit because he had not been granted release. A written response from a Parole Board official informed Plaintiff that the denial of reparole decision was non-appealable and no further action would be taken.

During a September, 2002 reparole interview, the Plaintiff refused to cooperate apparently on the grounds that his interviewers were biased. The resulting September 30, 2002 written decision issued by the Parole Board denied Keller reparole and ordered him to serve his unexpired maximum sentence. On April 30, 2003, the September 30, 2002 decision was modified and Plaintiff was provided with specific reasons for the denial of reparole.

Presently pending is the Remaining Defendants' motion for summary judgement. See Doc. 91. The motion has been briefed and is ripe for consideration.

## Discussion

### I. Standard of Review

The three (3) Remaining Defendants argue that they are entitled to entry of summary judgement on the grounds that: (1) Secretary Zwierzyna did not have personal involvement in the purported constitutional misconduct; (2) a viable retaliation claim has not been raised against Correctional Officer Higgins; and (3) Defendant Ryan is entitled to quasi-judicial immunity.

Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, supra, 106 S.Ct. at 2553 and 2554. Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Issues of fact are "genuine only if a reasonable jury,

considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**Personal Involvement**

The Remaining Defendants' initial argument contends that ex-Parole Board Secretary Zwierzyna is entitled to entry of summary judgment because she "was not involved in any aspect of any decision as to whether, when or who should interview Keller for re-parole and was not involved in any way in the decision not to re-parole Keller." Doc. 97, p. 10. Keller's opposing brief argues that Zwierzyna had personal involvement because her duties include ensuring that parole decisions "are made and processed in accordance with the Parole Act, existing laws, published regulations" and participation in Parole Board discussions "relating to the parole interview, parole hearing, or the processing of cases." Doc. 101, Exhibit C.

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of

7

the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims also cannot be premised on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

Rode, 845 F.2d at 1207.

In a declaration submitted under penalty of perjury, Kathleen Zwierzyna acknowledges that she served as Secretary of the Parole Board from June, 1999 to September, 2003.  See Doc. 97, Exhibit 1.  The former Secretary avers that her supervisory duties did not include any involvement in the Plaintiff's parole review process.  See id. at ¶ 5.  She adds that a fascimile of her signature together with her name and title appears at the bottom of all written Parole Board decisions rendered during her tenure.

Under the standards established in Rode, the Plaintiff's mere recitation of the duties of the Parole Board Secretary is

8

clearly insufficient for purposes of setting forth a valid § 1983 claim against former Secretary Zwierzyna. Likewise the fact that a facsimile of the Secretary's signature appears at the bottom of written decisions rendered by the Parole Board in Keller's case between 1999-2003 also not does not satisfy the personal involvement requirement.

Based upon a review of the record, Keller has failed to satisfy his burden under <u>Rode</u> of alleging that Defendant Zwierzyna had direct personal involvement or acquiescence involved in any unconstitutional conduct relating to the Plaintiff's consideration for re-parole. Summary judgment will be granted in favor of ex-Secretary Zwierzyna.

**Retaliation**

The Remaining Defendants' second argument maintains that Plaintiff's complaint does not include a retaliation claim against Correctional Officer Higgins. They add that because Higgins issued the misconduct charge before Keller threatened to sue Defendants Zwierzyna and Ryan, the Plaintiff has failed to satisfy his burden of establishing a retaliatory motive.[3]

In the original complaint, Plaintiff alleged that Correctional Officer Higgins issued him a false misconduct charge on September 6, 2001. <u>See</u> Doc. 1, ¶ 13. His complaint

---

[3] In partial support of this argument, the Remaining Defendants reference remarks made by the Plaintiff during the taking of his deposition. However, a review of the record shows that a copy of Keller's deposition testimony has not been submitted for consideration.

added that all of the named Defendants intentionally prevented him from obtaining favorable parole consideration due to his "seeking and threatening litigation against them in retaliation." Id. at ¶ 17. Based on those assertions and the liberal standards afforded pro se litigants, this Court construed the complaint as alleging that Higgins had issued Keller a falsified retaliatory disciplinary charge.

It has been recognized that the filing of a disciplinary charge, although not otherwise actionable under § 1983, is actionable if done in retaliation for an inmate's filing of a grievance pursuant to established procedures. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); see also Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989) (filing of false disciplinary charges is not a constitutional violation unless charges were filed in retaliation for the exercise of a constitutional right).

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a constitutional right).

In <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials. <u>Id</u>. <u>Allah</u> defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." <u>Allah</u>, 229 F.3d at 225.

Next, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him. Under <u>Rauser</u>, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. <u>Id</u>. at 334.

Upon further review of the complaint, this Court agrees that there is no specific allegation that Correctional Officer Higgins was acting in retaliation. Since the filing of a falsified disciplinary charge is only actionable if it is retaliatory, a determination of whether Defendant Higgins acted in retaliation is appropriate regardless of whether there is a specific allegation of retaliation set forth against Correctional Officer Higgins.

11

In a declaration submitted under penalty of perjury, Correctional Officer Higgins acknowledges that he issued the Plaintiff a misconduct on September 6, 2001. Keller was charged threatening an employee or their family with bodily harm, refusing to obey an order and using abusive language. See Doc. 47, Exhibit 3. Higgins states that on the above date he observed the Plaintiff standing in front of the food window "aggressively yelling." Id. at ¶ 19. The prisoner refused Higgins' order to move away from the window, used an obscenity, and threatened to hit the officer in the head with a tray. Defendant Higgins concludes that his decision to issue the misconduct was not influenced in any way by the Parole Board nor was it the result of any discriminatory or retaliatory intent.

It is additionally noted by the Remaining Defendants that the Plaintiff's threats to initiate litigation came after Higgins' issuance of the disciplinary charge. Keller's complaint clearly indicates that he did not threaten Defendants Ryan and Zwierzyna with litigation until October 17, 2001, well after the issuance of the misconduct. See Doc. 1, Exhibit G. Furthermore, there are no facts or allegations showing that Higgins had any contact or communication with Defendant Ryan or any Parole Board official regarding Keller at any time prior to or after the misconduct was issued. There are also no facts in the record to suggest that Correctional Officer Higgins was even aware that Plaintiff was eligible for parole during the relevant

12

time period.  Finally, the record is devoid of any facts which could support a claim that the misconduct was issued because Keller had engaged in some type of constitutionally protected conduct.

Based on those factors, it is clear that Plaintiff has not presented any facts to establish a retaliatory motive by Correctional Officer Higgins.  Thus, Keller's speculative, wholly conclusory claim of being issued a falsified/retaliatory misconduct charge fails to satisfy the requirements of Sprouse and Rauser.  Summary judgment will be entered in favor of Correctional Officer Higgins.

**Quasi Judicial Immunity**

In a declaration submitted under penalty of perjury, Sean Ryan acknowledges that he is a member of the Parole Board and that as part of his duties he interviewed the Plaintiff for re-parole at SCI-Dallas on August 21, 2001.  See Doc. 45, Exhibit 1, ¶ 5, 31.  During this interview Keller stated that he would pay the Act 27 fees if the Parole Board proved that it was his obligation to do so.

As a result, Ryan sought confirmation from the Parole Board's Office of Chief Counsel as to whether Plaintiff was required to pay the fees.  By memorandum dated August 28, 2001, the Parole Board's Assistant Counsel confirmed that Keller was obligated to pay the fees.  Ryan directed that Plaintiff be given a copy of the Assistant Counsel's memorandum and be placed

on the September 27, 2001 reparole docket.  See id. at ¶ 36.

On September 27, 2001, Plaintiff was housed in the SCI-Dallas RHU as a consequence of the misconduct charge issued by Correctional Officer Higgins.  The Plaintiff "refused to attend the reparole interview that I had scheduled for him."  Id. at ¶ 38.  Ryan adds that he had nothing to do with the issuance of the misconduct but admits that it was considered as a factor in determining Plaintiff's reparole eligibility.  On October 10, 2001, the Parole Board issued an unfavorable reparole decision based upon review of Plaintiff's file and consideration of his refusal to be interviewed.  Thereafter, on October 17, 2001, Plaintiff sent the Parole Board threatening litigation against both the Parole Board and Ryan.

On September 24, 2002, Ryan interviewed Plaintiff for reparole.  Keller informed Ryan that he was suing him for making things personal and did not feel that it was appropriate for the Defendant to conduct the interview.  According to Ryan's declaration, Keller then refused to cooperate with the interview process.  On September 30, 2002, the Parole Board denied Plaintiff reparole.  Ryan concludes by stating that he did not consider Keller's threat of litigation as a factor in his determination as to whether Plaintiff was suitable for reparole, and that the decision to deny reparole was based upon legitimate legal reasons.

The Remaining Defendants presently assert that Sean Ryan is

14

entitled to absolute immunity because the claims against him are based on actions taken by him while acting in a quasi judicial manner. It is initially noted that this Court previously denied Defendants' cursory argument that Ryan and the Parole Board were entitled to absolute immunity under Thompson v. Burke, 556 F.2d 231, 238 n. 13 (3d Cir. 1977) because "their function was adjudicatory in nature." Doc. 43, p. 5.

In reaching that conclusion, this Court recognized that the Court of Appeals for the Third Circuit in Thompson stated that Parole Board members perform quasi-judicial functions because they can affect length of terms of imprisonment and times when convicts can be paroled. However, in Thompson, the Court of Appeals added that absolute immunity was not available with respect to non-adjudicatory actions taken by parole officers. In their initial summary judgment motion, the Defendants failed to adequately support their conclusion that Ryan's challenged actions were adjudicatory in nature as opposed to being conduct undertaken in either an administrative or executive function.

The Remaining Defendants' present argument relies upon the Thompson and Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) decisions. They assert that a "cogent argument can be made that in denying Keller parole as a member of the Board, Ryan was performing an adjudicatory function and is entitled to the absolute immunity." Doc. 97, p. 13. It is specifically argued that Ryan was performing an adjudicatory duty in that the

15

Defendant was acting as a decision maker because he was conducting a reparole interview for the Parole Board's use in making a parole determination.

In rare cases, a public official is entitled to absolute immunity from § 1983 damages for official actions. See Butz v. Economou, 438 U.S. 478 (1978). Furthermore, the relevant inquiry is the nature and the function of the challenged act, not the act itself. Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992). The United States Court of Appeals for the Third Circuit in Wilson v. Rackmill, 878 F.2d 772, 775-76 (3d Cir. 1989) established that probation and parole officers are entitled to absolute immunity only when "they are engaged in adjudication duties." Wilson 878 F.2d at 775. If a parole or probation officer acts in an executive, administrative or investigative capacity, he or she is only entitled to a qualified good faith immunity.

It has been recognized that the distinction between executive and administrative actions taken by parole officials and those taken an adjudicatory capacity is not always clear. See Williams v. Consovoy, 333 F. Supp.2d 297, 300 (D.N.J. 2004) citing Simon v. Ward, No. 99-1554 2001 WL 41127 * 2 (E.D. Pa. Jan. 16, 2001).

In Bieros v. Nicola, 839 F. Supp. 332 (E.D. Pa 1993), the Eastern District of Pennsylvania held that probation officers are only entitled to absolute immunity if their challenged

actions occurred while they were performing adjudicatory duties. The district court added that the gathering of information in order to prepare a pre-sentence report was engagement in an administrative or executive duty as opposed to an action taken in an adjudicative capacity.  However, in Simon, it was recognized that hearing evidence and making recommendations as to whether to parole a prisoner are adjudicatory acts.  Simon, 2001 WL 41127 at *3.  Similarly, in Breslin v. Brainard, 2002 WL 31513425 *7 (E.D. Pa.  Nov. 1, 2002), the district court summarized that parole officials are only entitled to absolute immunity when engaged in: (1) hearing evidence; (2) making recommendations as to whether to parole a prisoner; or (3) making decisions whether to grant, revoke or deny parole. It is further noted that in Williams, absolute immunity was granted to a psychologist retained by a parole board to conduct an evaluation of a prisoner to assist it in its determination of the prisoner's suitability for release on parole.  See Williams, 333 F. Supp. 2d at 301.

It is undisputed that the claims against Defendant Ryan stem from interviews he conducted with Keller for the purpose of making a determination as to whether the prisoner should be granted reparole.  It is apparent to this Court that under the standards announced in Wilson, Williams, Simon, and Breslin, the conducting of an interview to determine whether an inmate is suitable for re-parole falls within one of the recognized adjudicatory duties entitled to absolute immunity.  See also Shaw v. Thomas, 2005 WL 2035364 *3 (M.D. Pa.  Aug. 22, 2005).

17

Consequently, Defendant Ryan's request for absolute immunity will be granted.  An appropriate Order will enter.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge



DATED: March 29 ,2006

```
                   UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


                                    :
WAYNE KELLER,                       :
        Plaintiff                   :
                                    :
    v.                              :  CIVIL NO.3:CV-02-1925
                                    :
                                    :  (Judge Conaboy)
PENNSYLVANIA BOARD OF PROBATION     :
AND PAROLE, ET AL.,                 :
        Defendants                  :
_____
```

## ORDER

AND NOW, THIS   29th DAY OF MARCH, 2006, IT IS HEREBY ORDERED THAT:

1. Remaining Defendants Kathleen Zwierzyna, Sean Ryan and W. Higgins' motion for summary judgment (Doc. 91) is granted.

2. The Clerk of Court is directed to close the case.

3. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

```
                                    s/ Richard P. Conaboy
                                   Richard P. Conaboy,
                                   United States District Judge
```